**IN THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

| | | |
|---|---|---|
| **JANET OGDEN PRICE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.**_____ |
| | ) | |
| **NORFOLK SOUTHERN CORPORATION,** | ) | |
| | ) | |
| **Serve:** | ) | **JURY TRIAL DEMANDED** |
| **Joseph H. Carpenter IV** | ) | |
| **Registered Agent** | ) | |
| **Three Commercial Place** | ) | |
| **Norfolk, Virginia 23510** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

Plaintiff Janet Ogden Price (hereafter "Ms. Price" or "Plaintiff"), by counsel, moves for judgment against Defendant Norfolk Southern Corporation (hereafter "Norfolk Southern" or "Defendant"), and as grounds therefore states as follows:

### STATEMENT OF THE CASE, JURISDICTION, AND VENUE

(1)     This is an action for declaratory, injunctive relief, and monetary damages, and to address deprivation of rights secured by the Family and Medical Leave Act, as codified under Title 29 U.S.C. §§ 2601 *et seq*. ("FMLA"), the Americans with Disabilities Act, as codified under Title 42 U.S.C. §§ 12101 *et seq*., and the ADA Amendments Act of 2008 ("ADAAA"), *see generally* , Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e, *et seq*. ("Title VII"), and the Age Discrimination in Employment Act, as codified under 29 U.S.C. §§ 621 through 634 ("ADEA").

(2)     The Court has jurisdiction over this action pursuant to 42 U.S.C. §2000e-

5(f) and 28 U.S.C. §1343(a)(4).

(3)     The claims asserted in this action arose within the Eastern District of Virginia and the alleged discrimination and damage occurred in the Eastern District of Virginia.  Venue of this action is, thus, proper pursuant to 42 U.S.C. §2000e, *et seq*.

(4)     Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission on April 28, 2020; received a notice of right to sue dated January 28, 2021 (Exhibit A); and commenced this action within 90 days of receipt thereof.

(5)     Defendant Norfolk Southern is a Class I railroad company headquartered in Norfolk, Virginia, that operates approximately 21,500 route miles, both domestically and internationally.

(6)     At all times material hereto, Norfolk Southern is and was a "person" within the meaning of Title VII, Section 701, 42 U.S.C. §2000e(a).  At all times material hereto, Norfolk Southern was an "employer" within the meaning of Title VII, Section 701, 42 U.S.C. §2000e(b), that is, at all times material hereto, Norfolk Southern was a person engaged in an industry affecting commerce which had 15 (fifteen) or more employees for each working day in each of 20 (twenty) or more calendar weeks during the years of Plaintiff's employment or the preceding calendar year.

(7)     Norfolk Southern was an employer of Plaintiff at all times material hereto as defined in the ADEA.

(8)     Plaintiff, at all times material hereto, is and was a resident of the Commonwealth of Virginia and was an "employee" of Norfolk Southern.

(9)   Ms. Price is currently 58 (fifty-eight) years of age.[1]

## STATEMENT OF FACTS

### Ms. Price worked for Norfolk Southern from 2008 until 2020, other than a brief period from 2016-2018 in which Ms. Price moved to Roanoke to care for her mother.

(10)   Janet Ogden Price was initially employed by Norfolk Southern in Roanoke, Virginia in August of 2008 as a consultant in the Coal Transportation Group.

(11)   Ms. Price was later hired as a full-time Norfolk Southern employee and remained in that position until the Roanoke, Virginia office closed in 2015.

(12)   Ms. Price thereafter transferred to the Sourcing Department as Sourcing Fleet Supervisor, which was a grade promotion, and moved to Norfolk, Virginia for this job.

(13)   In 2016, Ms. Price resigned due to her mother's deteriorating health to seek employment in Roanoke, Virginia, so that she could assist in caring for her mother.

(14)   In August of 2018, after Ms. Price no longer needed to care for her mother, Ms. Price was rehired by Norfolk Southern into the same Sourcing Fleet Supervisor position in Norfolk, Virginia.

(15)   As Sourcing Fleet Supervisor, Ms. Price was tasked with coordinating the delivery of new vehicles going into the field, reclaiming turn-in vehicles, determining the outcome of turn-in vehicles (such as whether the vehicle was to be auctioned, used for parts, or sent to a vendor to sell), negotiating excessive towing and storage bills, managing the storage and disposal of Norfolk Southern vehicles involved in claims, identifying gaps

---

[1] Ms. Price's exact date of birth is not included due to privacy concerns and filing requirements as per the United States District Court Eastern District of Virginia Local Rules.

in processes or failure points that could cause Norfolk Southern liability issues, working with ARI (a third-party vendor) on billing discrepancies, spearheading a work flow with ARI that would allow a more timely process, working with Armstrong (the carrier Norfolk Southern used to transport vehicles) to transport vehicles in a more cost-effective way for Norfolk Southern, working with various Norfolk Southern offices to locate vehicles that had not been reclaimed and could not be found,  preparing files for storage or destruction, and generally was the point of contact related to vehicles at Norfolk Southern, working with every department in Norfolk Southern in that regard.

### Upon Ms. Price's return to Norfolk Southern in 2018, Ms. Price was notified that there was a possibility her position would be transferred to Atlanta, Georgia.  Ms. Price indicated she intended to retire from Norfolk Southern and would move to Atlanta with her job if the relocation occurred.

(16)    At the time that she was rehired, Jon Zillioux, Assistant Vice President of Sourcing, informed Ms. Price that there was a possibility that the Sourcing Department might be relocated to Atlanta, Georgia.

(17)    Ms. Price informed Mr. Zillioux that she intended to retire from Norfolk Southern, and she would move to Atlanta if the relocation occurred.

### During the two years Ms. Price was caring for her mother, her position was filled and vacated three times by females due to the hostility the male management was displaying to the females.

(18)    Upon Ms. Price's return to Norfolk Southern, she learned that her position had been filled and vacated at least three times between 2016 and her return in 2018 due to the hostility the Atlanta Fleet Management team exhibited towards female members of the Sourcing Department.

**The workload was severely backlogged upon Ms. Price's return in 2018, and Ms. Price worked tirelessly to successfully catch the workload back up, saving Norfolk Southern large sums on money in the process.**

(19)    In addition, the workload was extremely backlogged as there were over two thousand files that had not been reviewed, pulled, or marked for destruction where applicable, and as a result, the department was out of compliance with the corporate records management policy.

(20)    In fact, there were sixty-seven uncompleted miscellaneous vehicle files left to be reviewed when Ms. Price resigned in 2016. These files were still there upon her return in 2018.  Upon her return to Norfolk Southern, Ms. Price worked tirelessly to resolve all these outstanding claims.

(21)    Accordingly, when Ms. Price went on leave pursuant to the Family Medical Leave Act in November of 2019, there were less than fifteen vehicles that remained uncompleted, and most of those vehicles were still being utilized.

(22)    Moreover, Ms. Price completed all backlogged new vehicle deliveries and replaced vehicle pick-ups by the close of 2018.

(23)    Additionally, Ms. Price, along with her manager, Mark Strelow, was able to locate and recover over two hundred vehicles that should have been scheduled for recovery during 2017 and 2018. These too had been accruing needless expenses for Norfolk Southern.

**Norfolk Southern awarded Ms. Price extra paid time off due to her extraordinary efforts. Ms. Price always received positive performance reviews.**

(24)    Due to her extraordinary efforts and excellent work performance, Ms. Price was awarded extra paid time off by Norfolk Southern.

(25)   At all times, Ms. Price met or exceeded all of Norfolk Southern's legitimate expectations.

(26)   Ms. Price always received positive performance reviews at Norfolk Southern.

**In June of 2019, Ms. Price applied for a promotion to the Sourcing Fleet Manager's position. An extremely unqualified male, Fred Alley, was selected over Ms. Price.  Ms. Price had to thereafter continuously fix and correct her manager's work, working countless hours and again saving Norfolk Southern large sums of money in the process.**

(27)   Continuing, in June of 2019, manager Mark Strelow was reassigned to another department.

(28)   At this time, and at Mr. Strelow's recommendation, Ms. Price applied for the Sourcing Fleet Manager's position.

(29)   Ms. Price was qualified for the Sourcing Fleet Manager's position.

(30)   Ms. Price was not interviewed and did not receive the position, despite her obvious qualifications.

(31)   Instead, Fred Alley, a male, was placed in the position.

(32)   Mr. Alley was at least the fifth consecutive male to hold this position.

(33)   Mr. Alley did not have the experience that Corey Plunkett, Sourcing Department Director, claimed was the type of experience that Norfolk Southern was looking to find for the position.

(34)   Moreover, soon after beginning work in the position, it was evident that Fred Alley was struggling with his job duties.

(35)   In fact, due to Mr. Alley's inability to properly enter data in the Master Vehicle Spreadsheet, Ms. Price had to continuously re-enter information into the spreadsheet.  Indeed, Mr. Alley frequently accidentally deleted the same data multiple

times, such that Ms. Price then had to renter the same data into the spreadsheet multiple times.

(36)     Mr. Alley also purposefully deleted himself from the managerial e-mail distribution lists and did not participate in fleet related telephone calls that were his responsibility. Ms. Price handled these responsibilities in addition to her own.

(37)     In October of 2019, Mr. Alley almost cost Norfolk Southern $75,000 when he failed to provide the United States Department of Treasury sufficient paperwork to demonstrate that a vehicle was purchased in Canada and, therefore, was not subject to taxes in the United States.  Ms. Price was required to resolve this issue, and saved Norfolk Southern $75,000, as Mr. Alley failed to properly handle the situation.

(38)     After Mr. Alley joined the Sourcing Department in August of 2019, Ms. Price had to work sixty or more hours each week to correct errors made by Mr. Alley.  Ms. Price had never been required to work these types of hours in the past.

## Mr. Alley had outrageous outbursts at Ms. Price when he was unable to perform his job duties and Ms. Price attempted to teach him how to do so.

(39)     When Ms. Price would try to work directly with Mr. Alley to teach him how to utilize the database, he would become frustrated and slam his keyboard and scream at her.

## Ms. Price reported Mr. Alley's harassment of women to supervision, EAP, and Human Resources and was informed to "deal with it." Male employees were not similarly informed to "deal with it" when they reported harassment of this nature.

(40)     Ms. Price reported Mr. Alley's outbursts to supervisor employees, and these supervisors, including Kisah Hutchings, Mr. Alley's direct manager, acknowledged to Ms. Price that they knew Mr. Alley's outbursts were occurring and that it was an issue.

7

(41)    Ms. Price also specifically reported to Joan Newcomb, EAP Manager, in or around August through October 2019 that Mr. Alley's failure to perform, his harassment, and the resulting hostile work environment were increasing her anxiety.

(42)    Ms. Price also reported Mr. Alley's behavior to Kendall Gayle, Human Resource Business Partner in or around September and October of 2019. Ms. Gayle informed Ms. Price that this was not the first complaint she had received concerning Mr. Alley.

(43)    Corey Plunkett, Sourcing Department Director, also was aware of Mr. Alley's harassment. Ms. Price requested from Mr. Plunkett that she be moved to a desk further away from Mr. Alley, which such request was denied.

(44)    In response to Ms. Price's complaints, Ms. Price was advised to find a way to "deal with it". Upon information and belief, Mr. Alley was never disciplined or counseled for his inappropriate behavior.

(45)    Other females, including employee Melanie Green, who experienced similar harassment and reported it to supervisory employees were informed the same thing, i.e., "deal with it". Upon information and belief, male employees were not similarly directed to "deal with it".

**Richard Scott, Atlanta Fleet Manager, also engaged in angry outbursts and would speak in a demeaning manner to Ms. Price when Ms. Price would ensure that situations were handled in an appropriate and lawful way.**

(46)    In and around the same time, Richard Scott, Atlanta Fleet Management, was making changes that were also negatively impacting the workflow in the Sourcing Department.

(47) When Ms. Price attempted to work through these issues with Mr. Scott, he would become extremely hostile to Ms. Price and would consistently use demeaning language towards Ms. Price.

(48) On one occasion, Mr. Scott screamed at Ms. Price when she informed Mr. Scott that the transport of a new vehicle had to be cancelled due to a manufacturer's safety recall on the vehicle.

### Ms. Price reported Mr. Scott's hostile behavior towards women to supervision, EAP, Norfolk Southern's EEO office, and Norfolk Southern's legal counsel. The harassment continued thereafter unabated.

(49) Ms. Price reported Mr. Scott's inappropriate and hostile behavior to Corey Plunkett (Sourcing Department Director), Jon Zillioux (Assistant Vice President of Sourcing), Joan Newcomb (EAP Manager), Caroline West (Deputy General Counsel) and Norfolk Southern EEO.

(50) However, Mr. Scott continued to speak in a demeaning manner to Ms. Price.

### Ms. Price suffers from anxiety and depression, and the harassment at Norfolk Southern exacerbated her conditions.

(51) Ms. Price suffers from anxiety and depression.

(52) Ms. Price's employer was aware of her disabilities / serious health conditions. Indeed, Ms. Price's diagnoses are noted in her Norfolk Southern employee file.

(53) During this time, due to increasing stress and anxiety and physical and mental exhaustion, Ms. Price's anxiety medication was increased by her physician. Ms. Price was also suffering from increased headaches due to what she was experiencing at work.

**In addition, Ms. Price contracted a viral infection in September of 2019 that significantly flared up her asthma, and Ms. Price was thereafter diagnosed with Stamper's Triad, a severe allergic reaction to Aspirin and NSAIDS, AERD (Aspirin Exasperated Respiratory Disease), and divergent migraines.**

(54)    Then, in September of 2019, Ms. Price contracted a viral infection, which progressed and flared up her asthma and led to excruciating pain in her ears. Ms. Price was diagnosed by a Rhinologist with Stamper's Triad, a severe allergic reaction to Aspirin and NSAIDS, AERD (Aspirin Exasperated Respiratory Disease), and divergent migraines (these conditions are referred to hereinafter, collectively as "ENT conditions").

**These conditions were exacerbated by the smell of fecal matter at Norfolk Southern that was caused by toilets that were stopped up and the sprays that employees were using to try to cover the odor.**

(55)    To make matters worse, Norfolk Southern employees deliberately stopped up the toilets in the ladies' restroom on an almost daily basis; the smell of fecal matter was sickening.

(56)    Moreover, employees were using sprays at work to try to cover the odor, which worsened Ms. Price's condition.

**In addition to multiple office visits, Ms. Price ended up in the Emergency Room due to the exacerbation of her medical conditions.**

(57)    Ms. Price's ENT conditions and her aggravated stress and anxiety due to what she was suffering at work resulted in multiple visits with her physician, an emergency room visit, and increased medications.

(58)    Ms. Price was being treated by Dr. Suzanna Jamison, PCP, Dr. Benjamin Hull, otolaryngologist, and Dr. Clement Elechi, Neurologist.  Dr. Elichi also referred Ms. Price to Dr. Marshall Freeman, a neurologist in Greensboro, North Carolina who specializes in the treatment of migraines.

**In November 2019, after losing 13 pounds in a month due to her ENT conditions, Ms. Price requested intermittent FMLA leave and an accommodation request that Ms. Price be permitted to work from home for three weeks until the severe symptoms were more controlled, a request that could have been easily accommodated by Norfolk Southern but was denied. Ms. Price was also required to publicly display a "sick day plan" at work and required that Ms. Price take intermittent FMLA for her anxiety and depression instead of her ENT conditions, although the reason she was requesting the leave was for her ENT conditions.**

(59)    From August of 2019 to approximately the third week in September 2019, Ms. Price lost 13 pounds.

(60)    Ms. Price, when she could no longer endure, inquired about leave pursuant to the Family Medical Leave Act in early November of 2019.

(61)    Norfolk Southern required Ms. Price to post a "sick day plan," which contained personal health information, to a calendar that was viewable by the entire office.

(62)    Moreover, Ms. Price's management would not permit Ms. Price to leave the office on or about November 4, 2019 until she publicly posted this "sick day plan".  Lana Mahek ultimately intervened and cleared a path for Ms. Price so that she could leave.

(63)    Ms. Price complained of to the requirement to publicly display her private medical information to Norfolk Southern's EEOC officers Danielle Stephens and Brian Urunkar.

(64)    Two weeks later, Ms. Stephens notified Ms. Price that the Sourcing Department Management was informed of her complaint and that management admitted to requiring Ms. Price to do this. Upon information and belief, though, no one was disciplined for what occurred.

(65)   Continuing, Dr. Suzanna Jamison, Carilion Clinic, first requested the accommodation that Ms. Price be permitted to work from home for three weeks while she was being treated.

(66)   Dr. Jamison's request for an accommodation for Ms. Price to work from home for three weeks while she received treatment was improperly denied by Norfolk Southern.

(67)   Ms. Price's job duties were easily able to be performed remotely for three weeks and permitting her to do so did not present an undue hardship on Norfolk Southern as Ms. Price had performed work remotely from time-to-time throughout her employment.

(68)   Thereafter, Dr. Jamison submitted paperwork to Norfolk Southern substantiating Ms. Price's need for intermittent FMLA leave for ENT (ears, nose, throat) issues.

(69)   Norfolk Southern refused to approve the leave for FMLA salary continuance, stating that Ms. Price's diagnosis did not meet the criteria for FMLA salary continuance.

(70)   Dr. Francesca Litow, Chief Medical Officer for Norfolk Southern, thereafter informed Ms. Price that Ms. Price had mental health issues, which was her primary medical condition, and that the ENT issues were secondary and insinuated that the only way that Ms. Price would be approved for FMLA salary continuance was if the FMLA leave request was based on Ms. Price's anxiety and depression diagnoses.

(71)   Dr. Jamison, therefore, submitted the paperwork as requested listing anxiety and depression in addition to the ENT issues.

(72)   This request was granted.

## While on medical leave, Ms. Price was notified her employment was terminated.

(73)     Thereafter, while Ms. Price was still on medical leave, Ms. Price was notified on February 13, 2020 that her employment was being terminated.

(74)     Ms. Price was expected to be cleared to return to work on or about February 17, 2020, and Norfolk Southern was notified of her expected return to work date but still terminated her employment.

(75)     Norfolk Southern claimed that Ms. Price's position was being eliminated.

## Ms. Price was replaced by a substantially younger male, which was in line with Norfolk Southern's pattern and practice of hiring younger males with little to no experience and targeting employees, especially female employees, over 50 for termination.

(76)     However, upon information and belief, Tommy Thompson, a substantially younger male, based in Atlanta, Georgia has taken over Ms. Price's job duties.

(77)     As previously stated, Ms. Price was willing to move to Atlanta for her job with Norfolk Southern; it is Norfolk Southern's usual pattern and practice to offer relocation to employees whose position is moved to another location.

(78)     Yet, Ms. Price was not offered to relocate to Atlanta.

(79)     Norfolk Southern has engaged in a pattern of practice of hiring younger males with little to no experience.

(80)     Norfolk Southern has also engaged in a pattern of practice of targeting employees over the age of 50 for termination from employment.

**In addition to Ms. Price's own job, which was relocated to Atlanta, Georgia, there were multiple jobs open at this time that Ms. Price was qualified for and could have been placed in, yet Norfolk Southern failed to offer any such positions to Ms. Price. Again, Ms. Price would have moved to Atlanta, Georgia for her job.**

(81)   Moreover, as Ms. Price was preparing to return to work in the latter part of January 2020 and early part of February 2020, Ms. Price received a call from Carla Groves, Group Manager, in which Ms. Groves expressed that she was excited that Ms. Price would be coming back soon and notified Ms. Price that the department had held a meeting discussing the restructuring of the department.  Ms. Groves further indicated that Ms. Price would be working with Lisa Holloman, Administrative Assistant to Jon Zilloux, on special projects.

(82)   Chris Pugh, Group Manager, and Suzan Sadler, Assistant Manager, also confirmed this to be accurate, and were informed of this during a department meeting.

(83)   Moreover, Ms. Price had just recently completed a college Excel class along with Lisa Holloman, which had been approved by Jon Zilloux. Furthermore, Ms. Price was approved to take the Certified Professional in Supply Chain Management course beginning in 2020.

(84)   Furthermore, there were other open available positions at this time for which Ms. Price was qualified.

(85)   As an example, Lana Malek, Buyer, resigned from her position, creating an open position.

(86)   Notably, Ms. Malek had been Fleet Supervisor, the position Ms. Price held, before obtaining the Buyer position.

(87)   Moreover, yet another employee, Melanie Green, had also made this same progression.

(88)   Thus, Ms. Price was qualified for the open position, yet she was not placed in or offered the position and was, instead, terminated from employment.

(89)   In addition, in and around this time, Ms. Price had also discussed with Randy Schilling, Group Manager, the possibility of being placed in a position in the Treasury Department.   Mr. Schilling expressed great interest in Ms. Price filling an upcoming position in the Treasury Department.   However, Ms. Price was not placed in this open position either.

**Norfolk Southern targeted Ms. Price and discriminated against her, failed to promote her, failed to place her in open available positions, and then terminated her employment because of her age, gender, disabilities and/or serious health conditions, and/or the intersection of the traits, and her use of FMLA leave and retaliated against her for making complaints concerning the discrimination she suffered at Norfolk Southern.**

(90)   Norfolk Southern targeted Ms. Price and discriminated against her, failed to promote her, failed to place her in open available positions, and then terminated her employment because of her age, gender, disabilities and/or serious health conditions, and/or the intersection of the traits, and her use of FMLA leave and retaliated against her for making complaints concerning the discrimination she suffered at Norfolk Southern.

## COUNT I: CLAIM FOR DISCRIMINATION
## AND RETALIATION IN VIOLATION OF THE FMLA

(91)   Ms. Price incorporates herein by reference the preceding paragraphs of this Complaint.

(92)   Norfolk Southern is: (1) engaged in commerce and/or in an industry affecting commerce; and (2) an employer of fifty (50) or more employees for each working day during each of twenty (20) or more calendar workweeks in the current or preceding calendar year.

(93)    Ms. Price worked for Norfolk Southern most recently for over one (1) year and worked more than 1,250 hours during the twelve (12) month period immediately preceding her request for FMLA leave.

(94)    Ms. Price properly notified Norfolk Southern of her disabilities/serious health conditions, and of her need for FMLA-qualifying leave, to which she was entitled, to seek treatment for her disabilities/serious health conditions.

(95)    Norfolk Southern discriminated against Ms. Price by improperly retaliating against her after she exercised the substantive FMLA rights to which she was entitled, and treating her differently, and less favorably, than similarly situated employees not exercising FMLA rights, resulting in Ms. Price's termination of employment and failure to place Ms. Price in open, available positions for which she was qualified.

(96)    Norfolk Southern would not have terminated Ms. Price's employment, nor taken the other discriminatory and retaliatory actions against her including failing to place her in open, available positions for which she was qualified, but for Ms. Price's requests related to, and use of, FMLA leave.

(97)    Any reasons given by Norfolk Southern for its treatment of Ms. Price were pretextual.

(98)    Norfolk Southern's discriminatory and retaliatory conduct prejudiced Ms. Price in that she lost compensation and benefits, sustained other monetary losses, and suffered the loss of her employment as a direct result of Norfolk Southern's violation.

(99)    As a direct and proximate result of Norfolk Southern's actions, Ms. Price has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

(100)  At all times material hereto, Norfolk Southern engaged in unlawful or discriminatory practices with bad faith, malice, or reckless indifference to the federally protected rights of Ms. Price so as to support an award of liquidated damages.

(101)  The above-described acts by Norfolk Southern and employees of Norfolk Southern constitute unlawful discrimination and/or retaliation in violation of the Family Medical Leave Act, as codified under Title 29 of the United States Code §§ 2601 *et seq*.

## COUNT II: CLAIM FOR INTERFERENCE
## IN VIOLATION OF THE FMLA

(102)  Ms. Price incorporates herein by reference the preceding paragraphs of this Complaint.

(103)  Norfolk Southern is: (1) engaged in commerce and/or in an industry affecting commerce; and (2) an employer of fifty (50) or more employees for each working day during each of twenty (20) or more calendar workweeks in the current or preceding calendar year.

(104)  Ms. Price worked for Norfolk Southern most recently for over one (1) year and worked more than 1,250 hours during the twelve (12) month period immediately preceding her request for FMLA leave.

(105)  Ms. Price properly notified Norfolk Southern of her disabilities/serious health conditions, and of her need for FMLA-qualifying leave, to which she was entitled, to seek treatment for her disabilities/serious health conditions.

(106)  Norfolk Southern interfered with Ms. Price's federally protected FMLA rights by requiring Ms. Price to place private medical information on a public calendar, denying Ms. Price continuous FMLA leave for her ENT conditions, requiring that Ms. Price take leave pursuant to a different disability/serious health condition, which was

17

different than the condition for which she needed FMLA leave, and then not permitting her to return from medical leave, and instead terminating her employment and failing to place Ms. Price in open, available positions for which she was qualified..

(107)  Norfolk Southern's interference with Ms. Price's FMLA rights prejudiced Ms. Price in that she lost compensation and benefits, sustained other monetary losses, and suffered the loss of her employment as a direct result of Norfolk Southern's violation.

(108)  As a direct and proximate result of Norfolk Southern's actions, Ms. Price has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

(109)  At all times material hereto, Norfolk Southern engaged in unlawful or discriminatory practices with bad faith, malice, or reckless indifference to the federally protected rights of Ms. Price so as to support an award of liquidated damages.

(110)  The above-described acts by Norfolk Southern and employees of Norfolk Southern constitute interference in violation of the Family Medical Leave Act, as codified under Title 29 of the United States Code §§ 2601 *et seq*.

## COUNT III: CLAIM FOR DISCRIMINATION
## AND RETALIATION IN VIOLATION OF THE ADAAA

(111)  Ms. Price incorporates herein by reference the preceding paragraphs of this Complaint.

(112)  At all times relevant to this Complaint, Ms. Price was a qualified individual with disabilities, pursuant to the ADAAA.

(113)  Specifically, and at all times relevant, Ms. Price suffered from anxiety, depression, asthma, Stamper's Triad, Aspirin Exasperated Respiratory Disease, and

divergent migraines, which impaired several of Ms. Price's daily life activities and/or functions including breathing, thinking, sleeping, eating, and working.

(114)   In the alternative, Ms. Price was regarded by Norfolk Southern as having such impairments.

(115)   At all times relevant, however, Ms. Price could perform the essential functions of her job with or without an accommodation.

(116)   Prior to her requests for accommodation, Ms. Price was performing her work at a satisfactory level and meeting or exceeding the legitimate business expectations of Norfolk Southern.

(117)   Ms. Price revealed her disabilities to her supervisors and the Human Resources department at Norfolk Southern and requested the reasonable accommodation of working half days remotely until her appointment with the ENT specialist on November 13, 2019, which was followed by a request by her physician for the accommodation of remote work for three weeks, which was denied.

(118)   Norfolk Southern discriminated and retaliated against Ms. Price by penalizing Ms. Price and requiring her to use vacation days for attending doctor's appointments, requiring her to place sensitive medical information on a public calendar, and then terminating her employment and failing to place her in open, available positions for which she was qualified.

(119)   Norfolk Southern would not have terminated Ms. Price's employment and failed to place her in open, available positions for which she was qualified, nor taken the other discriminatory and retaliatory actions against her, but for Ms. Price's disabilities and/or requests for reasonable accommodations.

(120)   Any reasons given by Norfolk Southern for its treatment of Ms. Price were pretextual.

(121)   Ms. Price's termination from employment occurred under circumstances that raise a reasonable inference of unlawful discrimination and retaliation based upon her disabilities and/or requests for accommodations.

(122)   As a direct and proximate result of Norfolk Southern's actions, Ms. Price has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

(123)   At all times material hereto, Norfolk Southern engaged in unlawful or discriminatory practices with malice or reckless indifference to the federally protected rights of Ms. Price so as to support an award of punitive damages for Ms. Price's discrimination claim.

(124)   The above-described acts by Norfolk Southern and employees of Norfolk Southern constitute disability discrimination and retaliation in violation of the Americans with Disabilities Act, as codified under Title 42 U.S.C. §§ 12101 *et seq*., and the ADA Amendments Act of 2008.

### COUNT IV: CLAIM FOR FAILURE
### TO ACCOMMODATE IN VIOLATION OF THE ADAAA

(125)   Ms. Price incorporates herein by reference the preceding paragraphs of this Complaint.

(126)   At all times relevant to this Complaint, Ms. Price was a qualified individual with disabilities, pursuant to the ADAAA.

(127)   Specifically, and at all times relevant, Ms. Price suffered from anxiety, depression, asthma, Stamper's Triad, Aspirin Exasperated Respiratory Disease, and

divergent migraines, which impaired several of Ms. Price's daily life activities and/or functions including breathing, thinking, sleeping, eating, and working.

(128)  At all times relevant, however, Ms. Price could perform the essential functions of her job with or without an accommodation.

(129)  Ms. Price revealed her disabilities to her supervisors and the Human Resources department at Norfolk Southern and her physician requested the accommodation of remote work for three weeks, which was denied.

(130)  Ms. Price's request could have been accommodated without undue hardship to Norfolk Southern.

(131)  As a direct and proximate result of Norfolk Southern's actions, Ms. Price has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

(132)  At all times material hereto, Norfolk Southern engaged in unlawful or discriminatory practices with malice or reckless indifference to the federally protected rights of Ms. Price so as to support an award of punitive damages.

(133)  The above-described acts by Norfolk Southern and employees of Norfolk Southern constitute failure to accommodate in violation of the Americans with Disabilities Act, as codified under Title 42 U.S.C. §§ 12101 *et seq*., and the ADA Amendments Act of 2008 ("ADA").

## COUNT V: CLAIM FOR INTERFERENCE
## IN VIOLATION OF THE ADA

(134)  Ms. Price incorporates herein by reference the preceding paragraphs of this Complaint.

(135)   At all times relevant to this Complaint, Ms. Price was a qualified individual with disabilities, pursuant to the ADA.

(136)   Specifically, and at all times relevant, Ms. Price suffered from anxiety, depression, asthma, Stamper's Triad, Aspirin Exasperated Respiratory Disease, and divergent migraines, which impaired several of Ms. Price's daily life activities and/or functions including breathing, thinking, sleeping, eating, and working.

(137)   At all times relevant, however, Ms. Price could perform the essential functions of her job with or without an accommodation.

(138)   Ms. Price revealed her disabilities/serious health conditions to her supervisors and the Human Resources department at Norfolk Southern and requested the reasonable accommodation of working half days remotely until her appointment with the ENT specialist on November 13, 2019, which was followed by a request by her physician for the accommodation of remote work for three weeks, which was denied.

(139)   Norfolk Southern interfered with Ms. Price's ADAAA rights by refusing to appropriately engage in a dialogue with her with regard to disability accommodations, improperly denying Ms. Price's accommodation request, requiring her to place protected medical information on a public calendar, requiring her to use vacation time to attend medical appointments for her disabilities, and treating Ms. Price differently, and less favorably than similarly situated employees – ultimately resulting in Ms. Price's unlawful termination from employment.

(140)   As a direct and proximate result of Norfolk Southern's actions, Ms. Price has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

(141)   At all times material hereto, Norfolk Southern engaged in unlawful or discriminatory practices with malice or reckless indifference to the federally protected rights of Ms. Price so as to support an award of punitive damages.

(142)   The above-described acts by Norfolk Southern and employees of Norfolk Southern constitute interference in violation of the Americans with Disabilities Act, as codified under Title 42 U.S.C. §§ 12101 *et seq*., specifically 42 U.S.C. § 12203(b), and the ADA Amendments Act of 2008.

## COUNT VI: CLAIM FOR SEX HARASSMENT/HOSTILE WORK ENVIRONMENT/GENDER DISCRIMINATION

(143)   Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

(144)   Defendant had a duty to maintain a work environment free of sex discrimination and harassment.

(145)   Defendant's action and inaction created a hostile an offensive work environment to Plaintiff and other female employees that interfered with Plaintiff's work.

(146)   Defendant knew or should have known of the hostile work environment and failed to take prompt remedial action reasonably calculated to end the harassment.

(147)   Defendant further discriminated against Plaintiff in violation of federal law in that Defendant discriminated against Plaintiff by failing to promote her to the Sourcing Fleet Manager position on the basis of her gender in violation of Title VII of the Civil Rights Act of 1964, as amended.

(148)   Defendant further discriminated against Plaintiff in violation of federal law in that Defendant discriminated against Plaintiff by terminating her employment and

failing to place her in open, available positions on the basis of her gender in violation of Title VII of the Civil Rights Act of 1964, as amended.

(149)   As a direct and proximate result of Defendant's actions, Plaintiff has suffered and will continue to suffer loss of employment, pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

(150)   At all times material hereto, Defendant engaged in a discriminatory practice or practices with malice or reckless indifference to the federally protected rights of Plaintiff so as to support an award of compensatory and punitive damages.

(151)   The above-described acts of Defendant constitute sex harassment, hostile work environment, and discrimination, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et seq*.

## COUNT VII: CLAIM FOR TITLE VII RETALIATION

(152)   Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

(153)   Defendant retaliated against Plaintiff in violation of federal law in that Defendant retaliated against Plaintiff by terminating her employment and failing to place her in open, available positions on the basis of her complaints of gender discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended.

(154)   As a result of Defendant's discriminatory acts, Plaintiff has suffered and will continue to suffer pecuniary loss, mental anguish, pain and suffering, shame, humiliation, embarrassment, loss of enjoyment of life and other non-pecuniary loss.

(155)   Defendant acted willfully toward Plaintiff with actual malice or with reckless disregard of the protected rights of Plaintiff so as to support an award of liquidated and exemplary damages.

24

(156)   The above-described acts of Defendant constitute sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et seq*.

### COUNT VIII:  CLAIM FOR AGE DISCRIMINATION

(157)   Plaintiff incorporates by reference herein the preceding paragraphs of this complaint.

(158)   Defendant discriminated against Plaintiff by terminating her employment, failing to place her in open, available positions for which she was qualified, and replacing her by a substantially younger male in violation of the ADEA.

(159)   As a direct result, Plaintiff has suffered and will continue to suffer loss of income and damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

(160)   Defendant acted intentionally, depriving Plaintiff of income because of her age, so as to support an award of liquidated damages.

(161)   The above-described acts of Defendant constitute age discrimination in violation of the Age Discrimination in Employment Act, as codified under 29 U.S.C. §§ 621 through 634.

### COUNT IX: CLAIM FOR INTERSECTIONAL DISCRIMINATION: SEX, DISABILITY AND/OR AGE DISCRIMINATION

(162)   Plaintiff incorporates by reference herein the preceding paragraphs of this complaint.

(163)   The actions of Defendant as described herein constitute intersectional discrimination based upon age in violation of the ADEA, based upon disability in violation of the ADAAA, and/or based upon gender in violation of Title VII.

(164)   As a direct result, Plaintiff has suffered and will continue to suffer loss of

25

income and damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

(165) Defendant acted willfully and with actual malice or with reckless disregard of the law in depriving Plaintiff of income because the intersection of her gender, disabilities, and/or age, so as to support an award of liquidated and/or punitive damages.

WHEREFORE, Plaintiff Janet Ogden Price demands judgment against Norfolk Southern Corporation, for injunctive and equitable relief, compensatory and/or punitive damages, together with pre-judgment interest and for costs and attorneys' fees to the extent recoverable by law, and for such other and further relief as may be just and equitable.

Trial by jury is demanded on all issues on which Plaintiff is entitled to trial by jury, including any question concerning whether Plaintiff's claims must be submitted to arbitration.

Respectfully Submitted,

JANET OGDEN PRICE

*/s/ Brittany M. Haddox*
Brittany M. Haddox, Esq. (VSB # 86416)
L. Leigh R. Strelka, Esq. (VSB # 73355)
Thomas E. Strelka, Esq. (VSB # 75488)
Monica L. Mroz, Esq. (VSB # 65766)
N. Winston West, IV, Esq. (VSB # 92598)
STRELKA EMPLOYMENT LAW
Warehouse Row
119 Norfolk Avenue, S.W., Suite 330
Roanoke, VA  24011
Tel:  540-283-0802
brittany@strelkalaw.com
leigh@strelkalaw.com
thomas@strelkalaw.com
monica@strelkalaw.com
winston@strelkalaw.com
*Counsel for Plaintiff*

## **VERIFICATION**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that: (1) I have reviewed this Complaint; (2) Regarding the allegations of which I have personal knowledge, I believe them to be true; and (3) Regarding the allegations of which I do not have personal knowledge, I believe them to be true based on specified information, documents, or both and the foregoing is true or correct.

Janet Ogden Price

_____
Janet Ogden Price